24 C.C.P.A.(Patents)

## DIRKES, KIMBALL & LONG v. POTTS.
### Patent Appeals No. 3722.

Court of Customs and Patent Appeals.

June 7, 1937.

Eugene C. Brown, of Washington, D. C., for appellants.

J. W. Schmied, of New York City, for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is stated in the brief for appellants to be one of a series of interferences declared in the United States Patent Office in which a reissue application of the party Potts is involved. Another of the series is the case of Duerr et al. v. Potts, 24 C.C.P.A. (Patents) ——, 90 F.(2d) 117, decided by this court May 29, 1937. As will be seen from an examination of our decision in that case, the issue here is entirely different from the issue there decided, but, by stipu-

lation of counsel, certain parts of the record in this case were not printed, because they appeared in the record filed in that case, and, with respect to those parts, it has been necessary to resort to that record. None other of the series has reached the stage for hearing before us.

On April 16, 1929, patent No. 1,708,954 was issued to Potts upon an application filed September 17, 1925. On April 21, 1931, patent No. 1,802,240 was issued to Dirkes et al. upon an application filed August 18, 1928. On April 10, 1931, Potts filed application, serial No. 529,268, for the reissue of his above-named patent, and, at some time subsequent to the issuance of the patent to Dirkes et al., copied therefrom the three claims which correspond to the counts at issue. The interference was declared April 13, 1933. In due course Dirkes et al. moved to dissolve, alleging that Potts had no right to make the claims. The motion to dissolve was denied by the Examiner of Interferences, and, later, judgment upon the record was entered awarding priority to Potts. Upon appeal to the Board of Appeals that tribunal affirmed the decision of the Examiner of Interferences, and Dirkes et al. bring the case to us for review.

The three counts at issue read:

"Count 1. In a telegraph system, a multiplex transmission circuit in which the signals transmitted comprise equal-impulse code combinations, a distributor for separating the successive combinations into separate channels, means in each channel for storing the received combinations, a simplex printer for each channel, means controlled by the distributor for producing start impulses for the printers after each combination stored, means associated with the distributor for supplying the stored combinations to the printers, and means controlled by the distributor for transmitting a rest impulse to each printer after the transmission of each combination.

"Count 2. In a telegraph system, a multiplex transmission circuit in which signals for the different channels are transmitted in rotation, a receiving distributor for separating the signals into separate channels, means in each channel for storing the received signal, a simplex printer for each channel, means including said distributor for transmitting a start impulse to each printer after a signal is stored, and means including said storing means for preventing the transmission of the starting impulse when no signal is received.

"Count 3. In a telegraph system, a multiplex transmission circuit in which the signals transmitted comprise equal-impulse code combinations, a receiving distributor for separating the successive combinations into separate channels, a simplex printer for each channel, and local means including said distributor for generating start and rest impulses for each printer."

To the lay mind the devices of both parties seem exceedingly complicated. Fortunately, however, there appears to be no necessity for an elaborate or particularly detailed description of them in their entirety, since the issue before us is limited to a specific feature, or features. The following general statement is taken from the decision of the Board:

"The subject matter relates to a telegraph system in which there is a multiplex transmission circuit for transmitting signals in code combinations. The structure comprises a distributor for separating the successive combinations into different channels, means in each channel for storing the received combinations, a simplex printer for each channel, means controlled by the distributor for producing start impulses for the printer and for transmitting rest impulses to the printers, and means associated with the distributor for supplying the stored combinations to the printers."

The limitations in the respective counts emphasized before us by counsel for appellants are (the italics being as used in the brief): First, that limitation in count 1, requiring "means controlled by the distributor for *transmitting* a rest *impulse* to each printer"; second, that limitation in count 2, requiring *"means including said storing means for preventing the transmission* of the starting impulse when no signal is received"; and, third, that limitation in count 3, requiring means "for generating start and rest impulses" which the brief paraphrases, *"generating* start *impulses* and rest *impulses."*

The gist of the argument by appellants' counsel is that the limitations so emphasized had definite meanings, which meanings were expressed in appellants' application, and that the limitations must be construed in the light of their application.

■ It is the well-settled rule that in an interference between a patent and an application, if the counts taken from the patent be found to be ambiguous, they are given the meaning which they have in the patent.

In the instant case, the Examiner of Interferences applied this rule and as a result denied the right of Potts (who did not appeal) to make certain counts. As to the three counts here at issue, however, he designated specific features in the Potts disclosure which, in his opinion, support them, holding that impulses stored upon a mechanism, shown in Fig. 18 of Potts' drawings, are supplied to the printer and that this device sends a rest impulse to the printer; that this mechanism is clearly "associated with the distributor" and controlled by it through a magnet; that this magnet is involved in the means for transmitting a start impulse to each printer; that when no signals are received and stored in the Potts system no starting impulse is sent; that the storing means, including certain grooved members, is clearly involved in the storing means in this operation, and that certain means, including the magnet above alluded to, under the control of the distributor, supports the limitation quoted, supra, from count 3. The Board gives an even more elaborate description of the Potts system and the manner in which it functions.

■■ Upon matters involving highly technical mechanisms like those here involved, this court must give great weight to the findings of the experts of the Patent Office. In the instant case, those findings constitute the only explanations which the record affords of the technical features of the respective systems. No affidavit, or other evidence, respecting the structure and operation of the systems was presented. Appellants insist upon a very limited interpretation of the counts, more limited we think than is proper under the well-established rules of law and practice. We are not convinced that there was error in the findings below to the effect that Potts shows a start-stop device controlled by the distributor, and that, in the operation of his system, there is action which, under any reasonable interpretation of the count, transmits "rest impulse" to the printer.

Counsel for appellants argues, as to the "rest impulse," that the requirement of count 3 is that a positive rest impulse be transmitted and not an impulse resulting from stopping the electric current. The Board says:

"The term, 'impulse', as a verb means to give an impulse or tendency to. In the sense of, to give a tendency to, the no current condition gives the tendency to rest and would appear to render the counts

readable upon the disclosure of the Potts device. It is understood that the term, as used in this art, is in the broad sense, as to give a tendency to, and it is our view that 'rest impulse', as employed in these counts, is sufficiently broad to be readable upon the current and no current system of the Potts disclosure."

We do not regard the interpretation of the count thus made as being erroneous, but, upon the contrary, think it reasonable and proper.

The decision of the Board of Appeals accordingly is affirmed.

Affirmed.